IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILIP LAYMAN,                          *

    Plaintiff,                        *

       v.                          *        Civil Action No. RDB-11-03139

MET LABORATORIES, INC.,                 *

    Defendant.                        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **MEMORANDUM OPINION**

Plaintiff Philip Layman ("Layman" or "Plaintiff") has brought this action for retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) and for wrongful discharge in violation of public policy against his former employer Defendant MET Laboratories, Inc. ("MET Labs" or "Defendant").   Layman alleges that his employment with MET Labs was terminated after he refused to approve a product testing report containing fraudulent data concerning product testing results of an Air/Hydraulic Pumping Unit.  According to Layman, the Pumping Unit was being tested for an eventual sale to the United States military.  Pending before this Court is Defendant MET Labs' Motion to Dismiss for Failure to State a Claim (ECF No. 7) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendant MET Laboratories, Inc.'s Motion to Dismiss (ECF No. 7) is GRANTED.

BACKGROUND

This Court accepts as true the facts alleged in the Plaintiff's complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).   Plaintiff Philip Layman ("Layman" or "Plaintiff") was employed by Defendant MET Laboratories, Inc. ("MET Labs" or "Defendant") from October 1991 to July 14, 2011.  Pl.'s Compl. ¶ 10, ECF No. 1.  "MET [Labs] is an independent electrical testing and certification lab, specializing in testing various technological products during pre-market development."  *Id.* ¶ 8.   From 1991 to 2006, Layman worked as a test engineer for MET Labs' Environmental Simulation Lab ("ESL"). *Id.* ¶¶ 11-12.  He was then promoted to the ESL Manager position in 2006.  *Id.* ¶ 17.  As ESL manager Layman "scheduled and assigned test engineers to perform product testing . . . assisted clients in developing, organizing and tailoring tests to be performed on a particular product . . . identified potential problems with products" and made recommendations.  *Id.* ¶¶ 19-20.  He was also responsible for "price quoting all ESL tests."  *Id.* ¶ 24.

In 2008, MET Labs built a dust chamber which "was [allegedly] riddled with problems" and constantly required repairs.  *Id.* ¶¶ 29-37.  "A dust chamber is designed to simulate a desert environment" and is used for product testing through the manipulation of the temperature, humidity and dust concentration levels.  *Id.* ¶ 30.  In May 2011, Windward Inc. ("Winward") hired MET Labs to test an Air/Hydraulic Pumping Unit ("Pumping Unit") in the dust chamber.  *Id.* ¶ 39.  Layman alleges that although he did not "know the specific use or the military client associated with the Pumping Unit," he believed that this "Pumping Unit would eventually be sold to the United States military."  *Id.* ¶ 40. Specifically, he alleges that the contract required the approval of a Defense Contract

Administration Services representative "to serve as the military Quality Assurance Representative ("QAR") . . . [and that p]rojects that require QAR witnesses tend to involve critical and significant military equipment." *Id.* ¶¶ 40-43.

According to him, during the testing of the Pumping Unit the dust chamber constantly malfunctioned and required a number of repairs. *Id.* ¶¶ 45-60. He claims that on May 31, 2011, he informed his supervisor of the continued dust chamber issues and that he would not approve further test results until the dust chamber was successfully repaired. *Id.* ¶¶ 61-63. He then alleges that despite this warning, his supervisor instructed test engineers under Layman's supervision to continue the testing and told him that he "would not have [his] signature on anything before long." *Id.* ¶¶ 66-68. On June 2, 2011, Layman alleges that he noticed that the testing engineers were altering the Pumping Unit's test results in a manner that he deemed to be fraudulent. *Id.* ¶ 69. Upon informing them that they were "faking data," they allegedly responded that they were following his supervisor's orders. *Id.* ¶¶ 72-77. Layman then alleges that although he subsequently confronted his supervisor about the "fraudulent calculations," his supervisor submitted a final report indicating that the "Pumping Unit met all testing standards." *Id.* ¶¶ 77-81. This report was signed by the Defense Contract Administration Services representative even though he allegedly was not present during certain of the Pumping Unit tests. *Id.* ¶ 81.

About two weeks after the issuance of the final report, Layman alleges that he was informed that his supervisor had solicited complaints about his work performance. *Id.* ¶¶ 85-88. A month later, on July 14, 2011, he claims that he was demoted to the position of Chief Technical Engineer which "entailed an approximate 15-20% pay cut, [and] no

supervisory authority." *Id.* ¶¶ 89-95.   Moreover, Layman claims that in said position he would have had to report to one of his former assistants and that it "allowed no opportunity for advancement." *Id.* ¶ 93.   Additionally, he claims that he never reviewed the complaints filed against him and that in twenty years with MET Labs he had never received " a negative performance evaluation." *Id.* ¶¶ 92, 95.   Finally, he claims that he resigned the same day he learned of his demotion.  *Id.* ¶ 94.   As a result, Layman filed the complaint in this action alleging that MET Labs assigned him to the Chief Technical Engineer position in retaliation for his refusal to approve the allegedly fraudulent report and that it "amounted to a constructive discharge." *Id.* ¶ 93.   The Complaint alleges one count of retaliation under Section 3730(h) of the False Claims Act and one count of wrongful discharge in violation of public policy.  Pl.'s Compl., ECF No. 1.

## STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation

omitted).   The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.

First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.)  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief."  *Id.* at 679.  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim.  It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted).  In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief."  *Iqbal*, 556 U.S. at 664.

## ANALYSIS

## I.    Retaliation under the False Claims Act

Defendant MET Laboratories, Inc. ("MET Labs" or "Defendant") argues that Plaintiff's claim of retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. §

3730(h) should be dismissed for failure to state a claim.  Specifically, MET Labs contends that (1) the report was not a claim on the federal government for money, and (2) Layman failed to plead facts alleging that he took acts in furtherance of a *qui tam* suit.

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, prohibits persons and entities from knowingly presenting false or fraudulent claims to the federal government for payment or approval.  The FCA may be enforced through its *qui tam* provisions which allow private individuals to initiate civil actions on behalf of the United States.  *See* 31 U.S.C. § 3730(b).  Section 3730(h) of the FCA, often referred to as the "whistleblower" provision of the Act, "prevents the harassment, retaliation, or threatening of employees who assist in or bring *qui tam* actions."  *Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997).  That provision states:

> An employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

A *prima facie* case of retaliation under the FCA requires a plaintiff to allege that (1) he took action "in furtherance" of a *qui tam* suit, *i.e.*, engaged in "protected activity," (2) his employer knew of this action, and (3) his employer retaliated against him as a result of his actions.  *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866 (4th Cir. 1999) (quoting *Zahodnick*, 135 F.3d at 914).  Although Layman appropriately alleges that MET Labs

retaliated against him as a result of his actions, he fails to plead sufficient facts to allege that he was engaged in protected activity.

The "protected activity" requirement of a FCA retaliation cause of action requires that an employee take some action "in furtherance" of a *qui tam* suit. 31 U.S.C. § 3730(h). The statute specifically protects "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." *Id.* Actions in furtherance of a *qui tam* suit generally include "situations in which litigation could be filed legitimately and excludes those in which an employee . . . fabricates a tale of fraud to extract concessions from the employer, or . . . just imagines fraud but lacks proof." *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 344 (4th Cir. 2010) (internal quotation marks and citation omitted). However, this Court has previously held that "mere reporting of concerns to supervisors" does not amount to protected activity under the act. *Glynn v. Impact Science & Techn., Inc.*, 807 F. Supp. 2d 391, 403, 407-08 (D. Md. 2011); *See also Zahodnick*, 135 F.3d at 914 ("Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that Zahodnick was acting 'in furtherance of' a *qui tam* action").

Additionally, a plaintiff sufficiently pleads that he engaged in protected activity where his allegations meet what has been termed the "distinct possibility" standard. *Id.* "Under this standard, protected activity occurs when an employee's opposition to fraud takes place in a context where 'litigation is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when . . . litigation is a reasonable possibility.'" *Id.* (quoting *Eberhardt*, 167 F.3d at 869). Importantly, an employee's investigations regarding his employer are only protected if the investigation concerns false or fraudulent claims. *See*

*Eberhardt*, 167 F.3d at 868; *Mann*, 630 F.3d at 345-46 ("The FCA's scope is commensurate with its purpose.  It covers only fraudulent claims against the United States; without fraud, there can be no FCA action.").  In other words, for Layman to sufficiently plead that he is protected by the whistleblower provision of the FCA, he must allege some nexus between any purported "protected activity" and a false or fraudulent claim submitted to the government.  *See U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 530 (D. Md. 2006).

In this case, Layman alleges that MET Labs submitted fraudulent test results to Winward, Inc., a private company, regarding an Air/Hydraulic Pumping Unit's product testing in the MET Labs dust chambers.  He also alleges that he believes that this Pumping Unit would eventually be sold to the United States military but that he did not to which specific military client it would be sold.  Additionally, he claims that he reported the continued dust chamber malfunction to his supervisor and that his supervisor both ignored his concerns and requested that fraudulent calculations be included in the final report.

First, it is important to note that Layman has not alleged that this report was submitted to the government or that a claim for payment was made to the government.  He only alleges that circumstances caused him to believe that the Pumping Unit might be sold to the military and that the final report was requested by and given to Winward, a private company.  While Plaintiff artfully attempts to argue that all fraudulent representations leading up to a submission to the government are subject to the FCA, his argument ignores the plain meaning of the statute which states that someone must "knowingly present to the government a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1).

Furthermore, all the cases relied upon by Plaintiff concern claims actually submitted to the federal government. *See, e.g., United States ex. rel. Marcus v. Hess*, 317 U.S. 537 (1963) (involving fraudulent statements in documents submitted as bids for federally funded contracts); *United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008) (involving a defendant's submission of a false claim to obtain a federal government contract); *Mann v. Hackler & Koch Defense, Inc.*, 639 F. Supp. 2d 619 E.D. Va. 2009), *aff'd* 630 F.3d 338 (4th Cir. 2010).

Even assuming that his allegation was sufficient to satisfy the requirement that a claim be submitted to the government, Layman fails to allege that he engaged in protected activity or that there was the distinct possibility that his conduct would lead to a viable FCA action. In fact, Layman merely alleges that he reported the problems concerning the dust chamber to his supervisor and that he confronted him upon learning that the supervisor had authorized what he believed to be fraudulent calculations. Layman does not allege having conducted an investigation or having sought to begin some type of action against his supervisor. Moreover, as was previously determined by this Court in *Glynn*, it appears that Layman was merely "performing his job function as a[n] [] engineer by reporting concerns and suggesting modifications to his supervisor[]," as opposed to engaging in protected activity under the FCA. *Glynn*, 807 F. Supp. 2d at 408. As such, his allegations are not sufficient to allege that he took action in furtherance of a *qui tam* suit.

Even if Layman had sufficiently alleged that he engaged in protected activity, he would also have to plead facts sufficient to show that MET Labs was aware, and had notice of, his protected conduct. The second prong of this analysis is related to the first, but

regardless of whether an employee engaged in protected activity, his employer must have had a sufficient amount of knowledge regarding that protected activity so as to be put on notice of the possibility of future *qui tam* litigation.  The employer must have knowledge or notice of the possibility of *qui tam* litigation, because without that requisite knowledge, it would be impossible for the employer to retaliate against the employee.  *See U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998) ("unless the employer is aware that the employee is investigating fraud, . . . the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)") (internal quotation marks and citation omitted).  Specifically, "[t]he employer must have knowledge of more than the employee's acts; the employer must have known that these acts raised a distinct possibility of a FCA suit. *Glynn*, 807 F. Supp. at 412-13.  The Fourth Circuit has explained that:

> Such notice can be accomplished by expressly stating an intention to bring a *qui tam* suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility.  Such actions would include, but are not limited to, characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved.  These types of actions are sufficient because they let the employer know, regardless of whether the employee's job duties include investigating potential fraud, that litigation is a reasonable possibility.

*Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999).

The central question is "whether what [Layman] told his superiors was sufficiently suggestive of fraud or falsity that [MET Labs] should have reasonably understood the possible follow-on of *qui tam* litigation." *Ackley v. Int'l Bus. Mach. Corp.*, 110 F. Supp. 2d 395, 401 (D. Md. 2000).  While Layman allegedly informed his supervisor that the Pumping Unit test results amounted to fraud due to the malfunctioning dust chamber and that he would

not approve a final report issued prior to significant repairs to it, these allegations were made in the context of a contract with a private entity.  Moreover, Layman made these allegations while performing his role as the ESL Manager.  As a result, although Layman alleged that fraud had occurred he has not alleged that it occurred in the context of a government contract or a claim on the government.  As such, he has not sufficiently alleged that his accusations of fraud would raise the distinct possibility of a False Claims Act suit.  As a result, Layman fails to sufficiently allege that he was retaliated against under the False Claims Act and this claim must therefore be DISMISSED WITHOUT PREJUDICE.

## II.     Wrongful Discharge in Violation of Public Policy

Defendant argues that Layman's claim for wrongful discharge in violation of public policy fails as a matter of law because a plaintiff cannot claim wrongful discharge when a statute, in this case the False Claims Act, seeks to vindicate the same rights.  In response, Plaintiff contends that "when there are multiple sources of public policy and at least one public policy mandate violated by a discharge does not arise from a statute that provides its own remedy, a viable cause of action for wrongful discharge exists based on the unremedied violation."  Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 18, ECF No. 10.  Specifically, Plaintiff relies on a public policy in favor of the investigation and reporting of suspected criminal activity as embodied by 18 U.S.C. § 1001[1] and 18 U.S.C. § 287.[2]

---

[1] "(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
    (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
    (2) makes any materially false, fictitious, or fraudulent statement or representation; or
    (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

As a preliminary matter, pursuant to 28 U.S.C. § 1367(c)(3), this Court has discretion to decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction."  In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a superfooted reading of applicable law."  Essentially, supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (quoting *Carnegie—Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  In this case, the same state claim for wrongful discharge in violation of public policy was addressed by this Court in *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595 (D. Md. 2008).  Accordingly, this Court will exercise supplemental jurisdiction over this state law claim.

Under Maryland law, the tort of wrongful discharge is not available where statutory remedies exist.  *See Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 773 (Md. 1990) (rejecting a wrongful discharge claim where the individual was able to "pursue a remedy under both the state and federal anti-discrimination statutes for his discharge from employment for apprising his employer of allegedly discriminatory employment practices").  Moreover, this

---

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years."

2 "Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title."

Court in *Glynn v. EDO Corporation* specifically held that "reliance on 18 U.S.C. § 1513(e) and 10 U.S.C. § 2409 [was] misplaced because those statutes simply provide the federal government with other tools to protect the same public policy interest: namely, deterring retaliation against whistleblowers." 536 F. Supp. 2d at 616. In that case, this Court noted that the sole public policy implicated was protected under the False Claims Act. Similarly, in this case, Layman has "a civil remedy in the form of the FCA retaliation provisions, and Maryland law precludes the use of the wrongful discharge tort to recover in the name of the same public policy interest." *Glynn*, 536 F. Supp. 2d at 616. As a result, Defendant's Motion to Dismiss Plaintiff's wrongful discharge claim is GRANTED and that claim is DISMISSED WITH PREJUDICE.

CONCLUSION

For the reasons stated above, Defendant MET Laboratories, Inc.'s Motion to Dismiss (ECF No. 7) is GRANTED. Plaintiff's retaliation claim under the False Claims Act is DISMISSED WITHOUT PREJUDICE and Plaintiff's wrongful discharge claim in violation of public policy is DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated:          September 12, 2012          /s/_____
                                             Richard D. Bennett
                                             United States District Judge